# EXHIBIT C

Superior Court of Rhode Island.
STATE of Rhode Island
v.
Marcus RODRIQUEZ
No. P1/00-2232A.
March 16, 2004.

*DECISION*

ISRAEL, J.
***1** This defendant was indicted by the Providence County grand jury on July 7, 2000, in Count 1 for the offense of kidnapping Ricardo Gomez, with intent to extort money in violation of G.L.1956 § 11-26-2. The defendant has moved pursuant to Super. R.Crim. P. Rule 12(b)(2) to dismiss Count 1 of the indictment on the ground of **double jeopardy**. The defendant argues that he has been tried and convicted on December 10, 2001, in the courts of the State of New York for the same offense as is charged against him in Count 1 of the indictment in this State.

There is no substantial dispute between the State and the defendant as to the historical facts which the defendant claims supports his defense of **double jeopardy**. They do differ as to some of the conclusions to be drawn from those facts. The defendant was indicted and tried in Bronx County in the State of New York for the crime of second degree **felony murder** of Ricardo Gomez, the victim of the kidnapping charged in the pending indictment in this Court. The kidnapping which underlay the New York prosecution for **felony-murder** was the same kidnapping which underlies the charge in the Rhode Island indictment.

The defendant argues that since the same kidnapping is an essential element of the crimes charged in both New York and Rhode Island, he has been exposed by the Rhode Island charge to **double jeopardy** prohibited by the **double jeopardy** clauses of both the Fifth Amendment to the Constitution of the United States and Section 7 of Article 1 of the Constitution of the State of Rhode Island.

The State argues that, *first,* the **double jeopardy** clause of the U.S. Constitution does not prohibit successive prosecutions of defendants by separate sovereigns for the same culpable conduct within the separate jurisdictions of the separate sovereignties. The **double jeopardy** clause of the R.I. Constitution is required to be construed and applied in the same manner as the same clause is construed and applied by the U.S. Supreme Court under the

U.S. Constitution. State v. Rodriquez, 822 A.2d. 894 (R.I.2003)

*Second,* the State argues that, even if the **double jeopardy** clause of either Constitution does prohibit successive prosecution of the same offenses in separate sovereignties, in this case the defendant was not in **jeopardy** for the same offense in both jurisdictions because each charge required the proof of an element not included in the other.

I. *The dual sovereignty rule:*

It is well established that the constitutional provision against **double jeopardy** in the Fifth Amendment to the United States Constitution will not be violated where an accused is tried for the same criminal conduct in separate sovereignties which have been joined in the federal union established by the U.S. Constitution. The rule applies whether one of the sovereignties is the United States, itself, *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); *Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 2 L.Ed.2d 729 (1959), or another sovereign state in the union. *Heath v. Alabama*, 474 U.S. 82, 106 S.Ct. 433 88 L .Ed.2d 387 (1985).

***2** The dual sovereignty rule is thoroughly embedded in American constitutional law, apparently as part of the price of federal union, surviving even the limitations on state power imposed by the Fourteenth Amendment, which laid to rest once and for all the claims of some state governments to enjoy a sovereign right of secession from the union.

The defendant urges the Court to find that there is an exception to the dual sovereignty rule derived from certain language in *Bartkus v. Illinois, supra.* In that case the record before the U.S. Supreme Court was said to:

"... not support the claim that the State of Illinois in bringing its prosecution was merely a tool of the federal authorities, who thereby avoided the prohibition of the Fifth Amendment against a retrial of a federal prosecution after an acquittal. It does not sustain a conclusion that the state prosecution was a sham and a cover for a federal prosecution, and thereby in essential fact another federal prosecution." *Bartkus, supra*, 359 U.S. at 123-24, 79 S.Ct. at 678-79, 3 L .Ed.2d at 687.

While the so-called "Bartkus exception" to the dual sovereignty doctrine has been recognized by some of the U.S. Circuit Courts of Appeal and questioned by others, it has virtually never been applied to prevent a state from prosecuting a defendant because of a prior trial of the accused by a federal court, let alone the court of another state.

An informative explication of the suggested exception appears in the opinion of the court in *U.S. v. Guzman*, 85 F.3d 823 (1 Cir.1996), in which it was, as usual,

not applied. The court said:

"We emphasize that the *Bartkus* exception is narrow. It is limited to situations in which one sovereign so thoroughly dominates or manipulates the prosecutorial machinery of another that the latter retains little or no volition in its own proceedings." *Id.* at 827.

Hard as it may be to imagine the prosecutorial authority which would surrender its independence so readily, the hypothetical propounded by this gloss on the *Bartkus* opinion is not in the realm of the totally inconceivable. In the *Guzman* case, the defendant accused the agent of the U.S. Drug Enforcement Agency of so dominating and manipulating the Dutch prosecutors on the Island of San Maarten as to make them tools of the United States, thereby surrendering so much of the sovereignty of the Netherlands or the United States without so much as a treaty or agreement between the two nations. In rejecting that accusation the court said:

"Cooperative law enforcement efforts between independent sovereigns are commendable, and, without more, such efforts will not furnish a legally adequate basis for invoking the *Bartkus* exception to the dual sovereign rule (citations omitted)" *Id.* at 828.

The defendant here offers no evidence whatever of any express agreement between the respective prosecutorial authorities of New York and Rhode Island to use one another as tools for each other. Although legally New York could have prosecuted the defendant for the crime of kidnapping, it is not at all clear that New York authorities dominated and manipulated the Rhode Island attorney-general in preferring the current indictment to the grand jury so much so that is no more than a transplanted New York re-prosecution of a convicted defendant.

***3** From the memoranda of counsel and the exhibits submitted by the defendant it appears that the evidence would tend to show that Ricardo Gomez was kidnapped in Rhode Island. The evidence would also tend to show that he was in continuous kidnapped custody until he was killed. Wherever the fatal blow was struck or Ricardo Gomez drew his last breath, the presence of his remains in New York gave that state the strongest *prima facie* claim of jurisdiction to prosecute the homicide. There is no evidence whatever that Rhode Island prosecutorial authority dominated or manipulated the New York law enforcement officers or prosecutors in their investigation and prosecution of a person accused of a murder, over which Rhode Island had at best a highly questionable jurisdiction, so that the New York prosecution was a sham.

At best, all the defendant shows is mutual cooperation between the two states to investigate and prosecute the defendant for the respective charges, in which each jurisdiction had the greater interest. The defendant claims that on at least

two instances each jurisdiction was acting as an instrumentality of the other. In the course of their investigation of the felony murder of Ricardo Gomez, New York City police interviewed Martha Villalona, who was identified as the girlfriend of Ricardo Gomez, and from whose apartment he was alleged to have been abducted. That interview took place in the apartment in Providence with the assistance of a Providence police detective who acted as a translator. In addition, New York police accompanied by Providence police searched the apartment and seized evidence, which was transported to a crime laboratory in New York and eventually used as evidence in the defendant's New York trial. Although the New York Police were purporting to search the apartment with Ms. Villalona's consent, the Providence police had obtained and executed a search warrant, pursuant to which the evidence used by the New York prosecutor was seized.

The Providence police were simultaneously investigating the disappearance of Ricardo Gomez. As Detective Malcolm Reiman of the New York Police Department testified at the New York trial of the defendant: "It was somewhat of a *joint* investigation. I think we both have pretty much the *same* aim. We had a body and they had a missing person." Nothing in the joint investigative activity of the two police departments in the interview of Martha Villalona and the search of and seizure of evidence from her apartment so much as suggests that either agency was dominating the other.

The defendant propounds the hypothesis that the prosecutors in the two pertinent jurisdictions were using one another as tools to prosecute the defendant successively. According to the record, originally the defendant and Edward Pozo were both indicted for the extortionate kidnapping of Ricardo Gomez in Rhode Island. Both defendants were apprehended in New York. Edward Pozo was extradited to Rhode Island but the defendant was not. Edward Pozo made incriminating statements to Providence detectives while he was in custody in Rhode Island. The defendant alleges that Mr. Pozo's statement was made available to New York authorities to aid in the prosecution of the defendant. Edward Pozo was released on bail, but he has fled and remains in flight from bail to this day, if he is still alive. It is undisputed that he did not testify in the New York trial of the defendant. The defendant alleges that for some undisclosed reason the Attorney General permitted prosecution of the defendant by the state of New York as a tool for this successive prosecution in Rhode Island. The defendant does not suggest how the State of Rhode Island could have prohibited New York's prosecution of a homicide within its jurisdiction, except by despicably refusing to cooperate and wrongfully withholding material evidence. No evidence suggests that New York was "pulling Rhode Island's chestnuts out of the fire."

***4** The conduct of police and prosecutors in each jurisdiction is shown to be nothing more than the type of routine cooperation commended by the court in *United States v. Guzman, supra.* The purely speculative conclusory allegations

of the defendant, even if their factual predicates were true, do not require an evidentiary hearing for their disposition. They simply do not demonstrate that either state was acting as a prosecutorial tool of the other. The *Bartkus* exception does not apply to this case, if there is such an exception.

II. *The Blockburger test:*

The State argues that, even if the *Bartkus* exception were to apply to the facts of this case such that the New York prosecution were to be deemed a Rhode Island prosecution, or vice versa, the offenses actually charged are not the same. The analytical test has been most recently set out in *State v. Rodriguez,* 822 A.2d at 905-06.

"In *State v. Boudreau,* 113 R.I. 497, 503, 322 A.2d 626, 629, (1974), this Court said that the standard for determining whether an accused is in danger of being twice placed in jeopardy for the same offense, in violation of the state constitutional provision precluding such conduct, is the same standard that was enunciated in *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309. In that case, the United States Supreme Court said that: '[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether *each provision requires proof of a fact which the other does not' Id. See also* *State v. Doyon,* 416 A.2d 130, 133 (R.I.1980), *State v. Pope,* 414 A.2d 781, 787-88 (R.I.1980), *State v. Innis,* 120 R.I. 641, 654-55, 391 A.2d 1158, 1165 (1978), *vacated on other grounds,* *Rhode Island v. Innis,* 446 U.S. 291100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The united States Supreme Court further indicated that " '[a] single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." ' *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309. Because of the similar wording and purpose underlying the state and federal constitutional provisions on this subject, Rhode Island cases have hewed closely to federal **double-jeopardy** law when applying the analogous clause in the Rhode Island Constitution. *See, e.g.,* *State v. Grullon,* 117 R.I. 682, 371 A.2d 265 (1977)." (Emphasis supplied.)

In this case the New York charge for **felony murder** contained an element of proof which the Rhode Island charge for extortionate kidnapping does not:-the homicide of the victim. Conversely, and most important, the Rhode Island charge contains an element of proof which the New York charge does not:-the intent of the accused to extort money or some other thing of value from the victim.

***5** An accused may not be punished by the courts of this State for both a felony murder and the felon underlying the felony murder prosecution. *State v. Doyon,*

416 A.2d 130, 133-34 (R.I.1980). The same appears to be true in the courts of the United States. *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 632 Ed.2d 715 (1980). It is noteworthy, however, that the courts of the State of New York take quite another view. There an accused may be tried, convicted and sentenced both for the felony murder and the underlying felony. *See* People v. Berzups, 49 N.Y.2d 417, 427-28, 426 N.Y.S.2d. 253, 258-59, 402 N.E.2d. 1155, 1160 (1980). The reason for that conclusion according to the Court of Appeals is:

"In contrast to the usual lesser included offense situation, in felony murder the underlying felony is not so much an element of the crime but instead functions as a replacement for the *mens rea* or intent necessary for common-law murder." *Id.* at p. 258.

As a consequence, unlike the situation in Rhode Island the underlying felony does not merge with the felony murder in New York.

Although the prosecution in New York proved at trial that the kidnapping which was the underlying felony in the murder charge was the Rhode Island kidnapping, it was not necessary for the prosecution to prove that the defendant had any special intent. The defendant could have been convicted of felony murder even if the underlying felony had been a kidnapping without a special intent, which New York classifies in § 135.20 of its Penal Code as kidnapping in the second degree, a class B felony. Second degree kidnapping in New York is substantially equivalent to the simple kidnapping described in G.L.1956 (2002 Reenactment) § 11-26-1(a). While it is true that a violation of § 11-26-1(a) may well be a lesser included offense in a charge of a violation of § 11-26-2, and an accused may not be tried successively for a violation of both sections by the same conduct under the holdings in *Innis* and its progeny, any problem of merger does not now confront the Court, in the event the dual sovereignty rule would not apply for any reason.

III. *Collateral estoppel*

The defendant completely misapprehends the doctrine of collateral estoppel. The State would be estopped from asserting the defendant's guilt, if in some other proceeding, to which it was a party, a court of competent jurisdiction had found against the State on the issue of guilt. *See* State v. Chase, 588 A.2d 120, 122-23 (R.I.1991). The doctrine can have utterly no application here, where the defendant was found guilty in a proceeding to which the State was not a party, nor in which it was bound by the findings of the New York tribunal. The doctrine of collateral estoppel simply does not apply to the fact charged in this indictment.

For all of the foregoing reasons, the defendant's motion to dismiss Count 1 of the indictment is denied.

Copr. (C) West 2006 No Claim to Orig. U.S. Govt. Works R.I.Super.,2004.
State v. Rodriquez
Not Reported in A.2d, 2004 WL 603516 (R.I.Super.)

END OF DOCUMENT