**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **MARCOS RODRIGUEZ,** | : | |
| **Petitioner** | : | |
| | : | |
| **v.** | : | **C.A. 08-112ML** |
| | : | |
| **DAVID McCAULEY, Warden** | : | |
| **STATE OF RHODE ISLAND and** | : | |
| **ATTORNEY GENERAL OF STATE** | : | |
| **OF RHODE ISLAND** | : | |

**MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS**

In an order issued March 26, 2008, United States District Court Judge Mary M. Lisi ordered the Attorney General of the State of Rhode Island to respond to Petitioner Rodriguez's "Petition under 28 U.S.C. §2241 for Writ of Habeas Corpus by a person in State custody." Accordingly, the State hereby moves to dismiss the petition for the reasons set forth in the accompanying memorandum and supporting exhibits.

Respectfully submitted,

**STATE OF RHODE ISLAND**
By its attorneys,

**PATRICK C. LYNCH**
**ATTORNEY GENERAL**

/s/ Aaron L. Weisman

**Aaron L. Weisman, # 4438**
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400

PDF created with pdfFactory trial version www.pdffactory.com

**CERTIFICATION**

Pursuant to AP 10 of this Court, effective August 1, 2006, I hereby certify that on the 3rd day of April, 2008, I filed this document electronically and that it is available for viewing and downloading from the ECF system. Service was accomplished by transmission of the Notice of Electronic Filing generated by the ECF system to the following attorney of record:

Edward J. McEnaney III, Esquire
attymcenaney@aol.com

and, I placed a copy of the within document in the U.S. mail, postage prepaid, to Marcos Rodriguez, #111006, Intake Center, MOD E-212-B, P.O Box 8249, Cranston, RI 02920 and to Raymond S. Sussman, Esquire, 4523 Avenue H, Brooklyn, New York 11234 on the same date.

/s/ Aaron L. Weisman



PDF created with pdfFactory trial version www.pdffactory.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **MARCOS RODRIGUEZ,** | **:** | |
| **Petitioner** | **:** | |
| | **:** | |
| **v.** | **:** | **C.A. 08-112ML** |
| | **:** | |
| **DAVID McCAULEY, Warden** | **:** | |
| **STATE OF RHODE ISLAND and** | **:** | |
| **ATTORNEY GENERAL OF STATE** | **:** | |
| **OF RHODE ISLAND** | **:** | |

**STATE OF RHODE ISLAND'S MEMORANDUM IN SUPPORT OF STATE'S MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS**

Background

In June of 2000, a Providence County (Superior Court) Grand Jury indicted Defendant, Marcos Rodriguez (along with Edward Pozo) of *Count 1*: kidnapping Ricardo Gomez with the intent to extort money from him (in violation of R.I.G.L. § 11-26-2) and *Count 2:* conspiracy to do the same. (Indictment Number P1/2000-2232A&B.) Approximately three years later, in June of 2003, Defendant moved to dismiss Count 1, pursuant to Super.R.Crim.P. 12(b)(2), on double jeopardy grounds: Defendant, in December of 2001, had been convicted in the State of New York of intentional murder in the second degree and felony murder in the second degree (receiving a twenty-five year to Life sentence at New York State's Sullivan Correctional Facility for such capital offenses), and since the events which underlay such convictions had its genesis in the events which formed the basis of Count 1 of Indictment Number P1/2000-2232A&B, he argued that the State of Rhode Island ought to be precluded from prosecuting such Count. The State filed a sixteen-page *Memorandum [In] *** Objection*, which, at some length,

PDF created with pdfFactory trial version www.pdffactory.com

set forth the factual background of the events leading to the Defendant's New York State conviction and Rhode Island prosecution,[1] and explained why the double jeopardy arguments raised by Defendant were plainly without substance.

---

[1] As recounted by the State in that *Memorandum*:

> On May 25, 1999 Ms. Emily Costa reported to members of the Providence Police Department that her husband, Ricardo Gomez, had been missing since May 23, 1999. Ms. Costa indicated to Providence Police that she was particularly concerned by her husband's absence because Gomez's life had been threatened by Marcos Rodriguez, the defendant herein. Ms. Costa indicated further that the defendant's girlfriend, Martha Villalona, had personally warned her that if Gomez did not pay the defendant the money that he owed her husband, Mr. Gomez, would be killed. This debt was allegedly incurred when Mr. Gomez failed to reimburse the defendant some $30,000-40,000 for the loan of cocaine.
>
> During the early morning hours of May 25, 1999 members of the New York City Police Department responded to Ferry Point Park, Hutchinson River Parkway, Bronx, New York. At that scene police observed the body of what appeared to be a homicide victim. The victim's hands and feet were bound together by multi-colored floral bedding and the body was badly burned. Industrial strength plastic wrap was found around the victim's neck. Through fingerprint analysis, the victim was identified as Ricardo Gomez. The office of the Chief Medical Examiner for the City of New York ruled the manner of death a homicide.
>
> On June 10, 1999 Martha Villalona was interviewed by Providence Police Detective Colon. Villalona informed Detective Colon that she was at home in bed with the defendant during the early morning hours of May 23, 1999 when she heard a knock on her door. She recognized the calling voice as belonging to Edward Pozo (A.K.A. Papito). Villalona described to Detective Colon how Pozo, Ricardo Gomez, and an unknown Hispanic male entered her apartment. Villalona indicated to Detective Colon that she heard Gomez pleading with the defendant for his life, stating that he would produce the money owed. According to Villalona, the defendant entered the bedroom and removed a multi-colored floral bed sheet from the closet. The defendant also took a box of industrial strength plastic wrap, with which Villalona thought she heard Gomez being bound. Villalona heard the sheet being ripped, and saw Ricardo Gomez taken from her apartment by the defendant and the two other men referred to above. Finally, Villalona informed Detective Colon



PDF created with pdfFactory trial version www.pdffactory.com

In a careful and learned decision issued March 16, 2004, (retired) Rhode Island Superior Court Justice Richard Israel roundly rejected Defendant's double jeopardy contentions[2]:

> I. *The dual sovereignty rule*:
>
> It is well established that the constitutional provision against double jeopardy in the Fifth Amendment to the United States Constitution will not be violated where an accused is tried for the same criminal conduct in separate sovereignties which have been joined in the federal union established by the U.S. Constitution. The rule applies whether one of the sovereignties is the United States, itself, Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, [] (1959); Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666, [] (1959), or another sovereign state in the union. Heath v. Alabama, 474 U.S. 82, 106 S.Ct. 433 [] (1985).
>
> The dual sovereignty rule is thoroughly embedded in American constitutional law, apparently as part of the price of federal union, surviving even the limitations on state power imposed by the Fourteenth Amendment, which laid to rest once and for all the

---

> that her car, a small Honda, was used to transport Gomez from her apartment and that she has never seen her car since. Villalona called the defendant shortly after he left the apartment, at which time the defendant threatened to kill Villalona if she relayed to anyone what she had witnessed.
>
> On December 8, 1999 Detective Colon interviewed Edward Pozo. Pozo provided police with a multi-page statement in which he admitted participation in the abduction of Ricardo Gomez. Pozo described how Gomez was brought into the above mentioned apartment, where the defendant demanded money from Gomez and threatened to kill him. Pozo also described how the defendant ordered him to wrap Gomez up in plastic and how torn bedding was used to bind his arms and legs. Gomez was brought out to Villalona's car and transported, against his will, to New York. En route, the defendant again demanded that Gomez get his money or he would be killed. Pozo informed Detective Colon that at 7:00 am the next morning he got a phone call from the defendant advising that Gomez was dead.

(*Memorandum In Support of State's Objection to Defendant's Motion to Dismiss* at 1-3.)

[2] Prior to Justice Israel's rendering of his *Decision*, he entertained oral argument on the issues on January 30, 2004, and, again, on February 3, 2004.



PDF created with pdfFactory trial version www.pdffactory.com

claims of some state governments to enjoy a sovereign right of secession from the union.

The defendant urges the Court to find that there is an exception to the dual sovereignty rule derived from certain language in Bartkus v. Illinois, ***supra.*** In that case the record before the U.S. Supreme Court was said to: "··· not support the claim that the State of Illinois in bringing its prosecution was merely a tool of the federal authorities, who thereby avoided the prohibition of the Fifth Amendment against a retrial of a federal prosecution after an acquittal. It does not sustain a conclusion that the state prosecution was a sham and a cover for a federal prosecution, and thereby in essential fact another federal prosecution." Bartkus, ***supra,*** 359 U.S. at 123-24, 79 S.Ct. at 678-79 [].

While the so-called "Bartkus exception" to the dual sovereignty doctrine has been recognized by some of the U.S. Circuit Courts of Appeal and questioned by others, it has virtually never been applied to prevent a state from prosecuting a defendant because of a prior trial of the accused by a federal court, let alone the court of another state.

An informative explication of the suggested exception appears in the opinion of the court in U.S. v. Guzman, 85 F.3d 823 (1st Cir. 1996), in which it was, as usual, not applied. The court said: "We emphasize that the Bartkus exception is narrow. It is limited to situations in which one sovereign so thoroughly dominates or manipulates the prosecutorial machinery of another that the latter retains little or no volition in its own proceedings." ***Id.*** at 827.

Hard as it may be to imagine the prosecutorial authority which would surrender its independence so readily, the hypothetical propounded by this gloss on the Bartkus opinion is not in the realm of the totally inconceivable. In the Guzman case, the defendant accused the agent of the U.S. Drug Enforcement Agency of so dominating and manipulating the Dutch prosecutors on the Island of San Maarten as to make them tools of the United States, thereby surrendering so much of the sovereignty of the Netherlands or the United States without so much as a treaty or agreement between the two nations. In rejecting that accusation the court said: "Cooperative law enforcement efforts between independent sovereigns are commendable, and, without more, such efforts will not furnish a legally adequate basis for invoking the Bartkus exception to the dual sovereign rule (citations omitted)" ***Id.*** at 828.

The defendant here offers no evidence whatever of any express agreement between the respective prosecutorial authorities of New York and Rhode Island to use one another as tools for each other. Although legally New York could have prosecuted the defendant for the crime of kidnapping, it is not at all clear that New York authorities dominated and manipulated the Rhode Island attorney-



PDF created with pdfFactory trial version www.pdffactory.com

general in preferring the current indictment to the grand jury so much so that is no more than a transplanted New York re-prosecution of a convicted defendant.

From the memoranda of counsel and the exhibits submitted by the defendant it appears that the evidence would tend to show that Ricardo Gomez was kidnapped in Rhode Island. The evidence would also tend to show that he was in continuous kidnapped custody until he was killed. Wherever the fatal blow was struck or Ricardo Gomez drew his last breath, the presence of his remains in New York gave that state the strongest *prima facie* claim of jurisdiction to prosecute the homicide. There is no evidence whatever that Rhode Island prosecutorial authority dominated or manipulated the New York law enforcement officers or prosecutors in their investigation and prosecution of a person accused of a murder, over which Rhode Island had at best a highly questionable jurisdiction, so that the New York prosecution was a sham.

At best, all the defendant shows is mutual cooperation between the two states to investigate and prosecute the defendant for the respective charges, in which each jurisdiction had the greater interest. The defendant claims that on at least two instances each jurisdiction was acting as an instrumentality of the other. In the course of their investigation of the felony murder of Ricardo Gomez, New York City police interviewed Martha Villalona, who was identified as the girlfriend of Ricardo Gomez, and from whose apartment he was alleged to have been abducted. That interview took place in the apartment in Providence with the assistance of a Providence police detective who acted as a translator. In addition, New York police accompanied by Providence police searched the apartment and seized evidence, which was transported to a crime laboratory in New York and eventually used as evidence in the defendant's New York trial. Although the New York Police were purporting to search the apartment with Ms. Villalona's consent, the Providence police had obtained and executed a search warrant, pursuant to which the evidence used by the New York prosecutor was seized.

The Providence police were simultaneously investigating the disappearance of Ricardo Gomez. As Detective Malcolm Reiman of the New York Police Department testified at the New York trial of the defendant: "It was somewhat of a ***joint*** investigation. I think we both have pretty much the ***same*** aim. We had a body and they had a missing person." Nothing in the joint investigative activity of the two police departments in the interview of Martha Villalona and the search of and seizure of evidence from her apartment so much as suggests that either agency was dominating the other.

The defendant propounds the hypothesis that the prosecutors in the two pertinent jurisdictions were using one another as tools to



PDF created with pdfFactory trial version www.pdffactory.com

prosecute the defendant successively. According to the record, originally the defendant and Edward Pozo were both indicted for the extortionate kidnapping of Ricardo Gomez in Rhode Island. Both defendants were apprehended in New York. Edward Pozo was extradited to Rhode Island but the defendant was not. Edward Pozo made incriminating statements to Providence detectives while he was in custody in Rhode Island. The defendant alleges that Mr. Pozo's statement was made available to New York authorities to aid in the prosecution of the defendant. Edward Pozo was released on bail, but he has fled and remains in flight from bail to this day, if he is still alive. It is undisputed that he did not testify in the New York trial of the defendant. The defendant alleges that for some undisclosed reason the Attorney General permitted prosecution of the defendant by the state of New York as a tool for this successive prosecution in Rhode Island. The defendant does not suggest how the State of Rhode Island could have prohibited New York's prosecution of a homicide within its jurisdiction, except by despicably refusing to cooperate and wrongfully withholding material evidence. No evidence suggests that New York was "pulling Rhode Island's chestnuts out of the fire."

The conduct of police and prosecutors in each jurisdiction is shown to be nothing more than the type of routine cooperation commended by the court in United States v. Guzman, *supra*. The purely speculative conclusory allegations of the defendant, even if their factual predicates were true, do not require an evidentiary hearing for their disposition. They simply do not demonstrate that either state was acting as a prosecutorial tool of the other. The Bartkus exception does not apply to this case, if there is such an exception.

II. *The Blockburger test*:

The State argues that, even if the Bartkus exception were to apply to the facts of this case such that the New York prosecution were to be deemed a Rhode Island prosecution, or vice versa, the offenses actually charged are not the same. The analytical test has been most recently set out in State v. Rodriquez, 822 A.2d at 905-06. "In State v. Boudreau, [] 322 A.2d 626, 629, (1974), this Court said that the standard for determining whether an accused is in danger of being twice placed in jeopardy for the same offense, in violation of the state constitutional provision precluding such conduct, is the same standard that was enunciated in Blockburger, 284 U.S. at 304, 52 S.Ct. at 182 []. In that case, the United States Supreme Court said that: '[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether *each provision*



PDF created with pdfFactory trial version www.pdffactory.com

*requires proof of a fact which the other does not' Id.* *** Because of the similar wording and purpose underlying the state and federal constitutional provisions on this subject, Rhode Island cases have hewed closely to federal double-jeopardy law when applying the analogous clause in the Rhode Island Constitution. ***." (Emphasis supplied.)

In this case the New York charge for felony murder contained an element of proof which the Rhode Island charge for extortionate kidnapping does not: -- the homicide of the victim. Conversely, and most important, the Rhode Island charge contains an element of proof which the New York charge does not: -- the intent of the accused to extort money or some other thing of value from the victim.

An accused may not be punished by the courts of this State for both a felony murder and the felon[y] underlying the felony murder prosecution. State v. Doyon, 416 A.2d 130, 133-34 (R.I. 1980). The same appears to be true in the courts of the United States. Whalen v. United States, 445 U.S. 684, 100 S.Ct. 1432 [] (1980). It is noteworthy, however, that the courts of the State of New York take quite another view. There an accused may be tried, convicted and sentenced both for the felony murder and the underlying felony. *See* People v. Berzups, [] 426 N.Y.S.2d. 253, 258-59 [] (1980). The reason for that conclusion according to the Court of Appeals is: "In contrast to the usual lesser included offense situation, in felony murder the underlying felony is not so much an element of the crime but instead functions as a replacement for the *mens rea* or intent necessary for common-law murder." *Id.* at p. 258.

As a consequence, unlike the situation in Rhode Island the underlying felony does not merge with the felony murder in New York.

Although the prosecution in New York proved at trial that the kidnapping which was the underlying felony in the murder charge was the Rhode Island kidnapping, it was not necessary for the prosecution to prove that the defendant had any special intent. The defendant could have been convicted of felony murder even if the underlying felony had been a kidnapping without a special intent, which New York classifies in § 135.20 of its Penal Code as kidnapping in the second degree, a class B felony. Second degree kidnapping in New York is substantially equivalent to the simple kidnapping described in G.L.1956 (2002 Reenactment) § 11-26-1(a). While it is true that a violation of § 11-26-1(a) may well be a lesser included offense in a charge of a violation of § 11-26-2, and an accused may not be tried successively for a violation of both sections by the same conduct under the holdings in *Innis* and its progeny, any problem of merger does not now confront the Court, in the event the dual sovereignty rule would not apply for any reason.



PDF created with pdfFactory trial version www.pdffactory.com

(State v. Rodriguez, 20004 WL 603516 (R.I.Super.).)

Petitioner took issue with this determination, and challenged it before the Rhode Island Supreme Court. The Rhode Island Supreme Court, in an opinion reported as State v. Rodriguez, at 917 A.2d 409 (R.I. 2007), affirmed the Superior Court's decision, holding that there was no factual basis upon which to invoke the exception to the dual sovereignty doctrine. Petitioner now appears to challenge that determination, of the Rhode Island Supreme Court, before this Court by way of his ***Petition Under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State Custody***."

Discussion

Because Petitioner is a pretrial detainee (awaiting his Rhode Island trial on kidnapping charges) and not in the State of Rhode Island's custody "pursuant to the ***judgment*** of a State court" (28 U.S.C. § 2254(a), (b), (d), and (e))(emphasis added)), it would appear that his instant double-jeopardy predicated contention is properly considered pursuant to 28 U.S.C. § 2241, and not § 2254. *See e.g.* Walck v. Edmondson, 472 F.3d 1227, 1234-1235 (10th Cir. 2007)(holding that § 2241 is the proper avenue by which to challenge pretrial detention, including when such challenges are based on double jeopardy grounds.); Stow v. Murashige, 389 F.3d 880, 885-87 (9th Cir. 2004); Benson v. Superior Court, 663 F.2d 355, 358 (1st Cir. 1981). This is obviously beneficial to Petitioner because, not only is there no exhaustion requirement in § 2241 actions (though that would not be relevant in this case), the quite deferential standard of review mandated by actions brought under § 2254 is not mandated in § 2241 actions, but rather the standard of review is de novo.



PDF created with pdfFactory trial version www.pdffactory.com

Even under such a standard, however, it is clear, the State respectfully suggests, that Petitioner's claim is not remotely colorable. As the Rhode Island Supreme Court cogently explained:

> The defendant relies on a line of United States Supreme Court cases to support his contention that double jeopardy bars prosecution for a lesser-included offense, ***e.g.,*** kidnapping, after conviction for a greater offense, ***e.g.,*** felony murder. *See Lewis v. United States,* 523 U.S. 155, 177 [] (1998) (Scalia, J. and Thomas, J., concurring) ("[D]ouble jeopardy law treats greater and lesser included offenses as the same, *** so that a person tried for felony murder cannot subsequently be prosecuted for the armed robbery that constituted the charged felony. That is fair enough; ***."); *Whalen v. United States,* 445 U.S. 684, 693-94 [] (1980); *Harris v. Oklahoma,* 433 U.S. 682, 682 [] (1977) (per curiam); *Blockburger v. United States,* 284 U.S. 299 [] (1932); *see also State v. Doyon,* 416 A.2d 130, 134 (R.I.1980) (underlying felony of arson merges with felony murder because only one of the offenses required proof of a fact the other did not); *State v. Innis,* [] 391 A.2d 1158, 1167 (1978) ("defendant may not be convicted of both murder in the first degree under a felony murder theory and the underlying felony of robbery"), *vacated on other grounds, Rhode Island v. Innis,* 446 U.S. 291 [] (1980). The defendant also asserts that Rhode Island "waived any claim to a constitutional right of dual sovereignty" by and through the conduct of its law enforcement and prosecutorial officials in cooperating with New York officials to convict defendant. Because we deem the dual sovereignty principle dispositive of defendant's double jeopardy argument, we begin our analysis by addressing the doctrine of dual sovereignty.
>
> A. Dual Sovereignty
>
> Dual sovereignty is a concept firmly embedded in our constitutional jurisprudence, deriving from the reality that each state was an independent political entity before the United States Constitution was ratified. *See Printz v. United States,* 521 U.S. 898, 918-19 [] (1997). Although the several states surrendered many of their sovereign powers "in order to form a more perfect union," U.S. Const., Preamble, they retained "a residuary and inviolable sovereignty." *Printz,* 521 U.S. at 919 [] (quoting The Federalist No. 39 (J. Madison)). At first, residual state sovereignty largely was implicit "in the Constitution's conferral upon Congress of not all governmental powers, but only discrete, enumerated ones ***" but later "was rendered express by the Tenth Amendment's assertion



PDF created with pdfFactory trial version www.pdffactory.com

that '[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.'" ***Printz,*** 521 U.S. at 919 [.]

As separate sovereigns, the federal government and each state possess, "the power, inherent in any sovereign, independently to determine what shall be an offense against its authority and to punish such offenses, and in doing so each 'is exercising its own sovereignty, not that of the other.'" ***United States v. Wheeler,*** 435 U.S. 313, 320 [] (1978) (quoting ***United States v. Lanza,*** 260 U.S. 377, 382 [] (1922)). Thus, "[w]hen a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offences.'" ***Heath v. Alabama,*** 474 U.S. 82, 88 [] (1985)(quoting ***Lanza,*** 260 U.S. at 382 []).

Although the federal Double Jeopardy Clause, which applies to the states through the Fourteenth Amendment, provides that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb," U.S. Const. Amend. V, the United States Supreme Court repeatedly has held that even identical offenses are not considered the "same offense" within the meaning of double jeopardy if they are prosecuted by independent sovereigns. ***See Heath,*** 474 U.S. at 88 [] (successive state-state prosecutions); ***Wheeler,*** 435 U.S. at 330 [] (successive Navajo tribal court-federal prosecutions); ***Bartkus v. Illinois,*** 359 U.S. 121, 136 [] (1959) (successive federal-state prosecutions); ***United States v. Rezaq,*** 134 F.3d 1121, 1128 (D.C.Cir.1998) (successive foreign-federal prosecutions). Moreover, it is well established by this Court that "Rhode Island cases have hewed closely to federal double-jeopardy law when applying the analogous clause in the Rhode Island Constitution." ***State v. Rodriguez,*** 822 A.2d 894, 906 (R.I.2003). Accordingly, under both federal and state constitutional standards, although double jeopardy forecloses multiple prosecutions for the same offense by the same sovereign, it does not prohibit successive prosecutions by separate sovereigns. ***See Heath,*** 474 U.S. at 87-88 []. As the United States Supreme Court instructs, "when the same act transgresses the laws of two sovereigns, 'it cannot be truly averred that the offender has been twice punished for the same offence; but only that by one act he has committed two offences, for each of which he is justly punishable.'" ***Id.*** at 88, [] (quoting ***Moore v. Illinois,*** 55 U.S. (14 How.) 13, 20 [] (1852)).

The crucial question in determining the applicability of the dual sovereignty doctrine is whether the entity that seeks to prosecute a defendant for the same course of conduct, for which another entity



PDF created with pdfFactory trial version www.pdffactory.com

previously has subjected the defendant to jeopardy, draws its authority to punish the offender from a distinct source of power. ***Heath,*** 474 U.S. at 88, []; ***see, e.g., Wheeler,*** 435 U.S. at 320 []; ***Waller v. Florida,*** 397 U.S. 387, 393 [] (1970); ***Puerto Rico v. Shell Co.,*** 302 U.S. 253, 264 [] (1937); ***Lanza,*** 260 U.S. at 382 []. Clearly, states are separate sovereigns with respect to the federal government because each state's power to prosecute is derived from its own "inherent sovereignty," not from the federal government. ***Wheeler,*** 435 U.S. at 320 n. 14 []. Only more recently, however, has the United States Supreme Court articulated the applicability of the dual sovereignty doctrine with respect to successive prosecutions under the laws of different states. ***Heath,*** 474 U.S. at 88-89 []. Mindful of the importance of the basis of authority inquiry described above, the Court in ***Heath*** explained that "States are no less sovereign with respect to each other than they are with respect to the Federal Government." ***Id.*** at 89 []. The power of states to prosecute criminal cases derives from "separate and independent sources of power and authority originally belonging to them before admission to the Union and preserved to them by the Tenth Amendment." ***Heath,*** 474 U.S. at 89 [].

Consistent with this analysis, the Supreme Court in ***Heath*** held that "[t]he dual sovereignty doctrine, as originally articulated and consistently applied by this Court, compels the conclusion that successive prosecutions by two States for the same conduct are not barred by the Double Jeopardy Clause." ***Heath,*** 474 U.S. at 88 []. To hold otherwise, the Court announced: "'would be a shocking and untoward deprivation of the historic right and obligation of the States to maintain peace and order within their confines.' "*** A State's interest in vindicating its sovereign authority through enforcement of its laws by definition can never be satisfied by another State's enforcement of ***its*** own laws. Just as the Federal Government has the right to decide that a state prosecution has not vindicated a violation of the 'peace and dignity' of the Federal Government, a State must be entitled to decide that a prosecution by another State has not satisfied its legitimate sovereign interest." ***Id.*** at 93 [](quoting ***Bartkus,*** 359 U.S. at 137 []).

B. The ***Bartkus*** Exception

The Supreme Court has insinuated an incommodious exception to the principle of dual sovereignty. In ***Bartkus,*** Justice Frankfurter suggested that dual state and federal prosecutions might run afoul of the general rule affirming such prosecutions if one authority was acting as a "tool" of the other, or if the state prosecution merely was "a sham and a cover for a federal prosecution." ***Bartkus,*** 359 U.S. at



PDF created with pdfFactory trial version www.pdffactory.com

123-24 []. Although a number of courts have inferred an exception to the dual sovereignty rule from this language in *Bartkus, see United States v. Raymer,* 941 F.2d 1031, 1037 (10th Cir.1991); *United States v. Bernhardt,* 831 F.2d 181, 182 (9th Cir.1987), the exception is considered extremely narrow and difficult to prove. *See United States v. Rashed,* 234 F.3d 1280, 1282 (D.C.Cir.2000); *United States v. Guzman,* 85 F.3d 823, 827 (1st Cir.1996); *United States v. Figueroa-Soto,* 938 F.2d 1015, 1019 (9th Cir.1991). As articulated by the First Circuit Court of Appeals in *Guzman,* the exception is limited "to situations in which one sovereign so thoroughly dominates or manipulates the prosecutorial machinery of another that the latter retains little or no volition in its own proceedings." *Guzman,* 85 F.3d at 827. However, even in *Guzman,* in which the evidence indicated that an agent of the United States traveled to the island of St. Maarten, alerted St. Maarten police to the defendant's presence on a ship smuggling drugs, participated in a search for drugs on board, and testified at trial, the court held that those facts demonstrated, "nothing more than the rendering of routine intergovernmental assistance." *Guzman,* 85 F.3d at 828. The court concluded that "[c]ooperative law enforcement efforts between independent sovereigns are commendable, and, without more, such efforts will not furnish a legally adequate basis for invoking the *Bartkus* exception to the dual sovereign rule." *Id.*

In the instant case, defendant urges this Court to rule that the dual sovereignty doctrine does not apply because of the joint efforts of New York and Rhode Island officials to prosecute defendant. The defendant asserts that "[e]ach state acted on behalf of the other[,]" and that "the conduct of the law enforcement officials merged the prosecutions to such an overlapping extent that they were no longer separate." Accordingly, defendant contends that Rhode Island "has waived any right it may have had pursuant to the doctrine of dual sovereignty."

Based upon our *de novo* review of the record in this case, we concur with the motion justice that defendant has not presented sufficient evidence to warrant an application of the *Bartkus* exception. As the motion justice articulated in his decision, the evidence suggested that the victim, Ricardo Gomez, was kidnapped from Rhode Island and remained, "in continuous kidnapped custody until he was killed. Wherever the fatal blow was struck or Ricardo Gomez drew his last breath, the presence of his remains in New York gave that state the strongest *prima facie* claim of jurisdiction to prosecute the homicide. There is no evidence what[so]ever that Rhode Island prosecutorial authority dominated or manipulated the New York law enforcement officers or prosecutors in their



PDF created with pdfFactory trial version www.pdffactory.com

investigation and prosecution of a person accused of murder, over which Rhode Island had at best a highly questionable jurisdiction, so that the New York prosecution was a sham."

Nonetheless, defendant submits that certain events demonstrate the extent to which the Rhode Island Attorney General and the New York District Attorney collaborated to bring about successive prosecutions for the murder and kidnapping of Ricardo Gomez. According to the record, defendant and his cohort, Edward Pozo, were both indicted in Rhode Island for extortionate kidnapping and conspiracy in June of 2000. Although Mr. Pozo was extradited to Rhode Island, defendant remained in New York to await trial for the murder of Ricardo Gomez. The defendant insists that the decision by the Attorney General in Rhode Island to extradite Mr. Pozo, and not defendant, implicitly evinces an agreement with the District Attorney in New York to divide the prosecutions for murder and kidnapping between the two jurisdictions. Moreover, defendant maintains that each jurisdiction's offer of immunity to Martha Villalona, defendant's girlfriend, for her alleged participation in the kidnapping, in exchange for her testimony, further illustrates the existence of this alleged agreement.

Contrary to the defendant's assertion, however, we do not infer from the evidence that any surreptitious agreement, either express or implied, existed between the prosecutors in Rhode Island and New York to prosecute the defendant successively for murder and kidnapping. We fail to see how the extradition of Mr. Pozo, or the immunity offered to Ms. Villalona, demonstrates a merger of prosecutorial effort arising to such an insidious level as to devastate the sovereignty of either jurisdiction. Despite the defendant's allegations, we agree with the trial justice's findings that: "At best, all the defendant shows is mutual cooperation between the two states to investigate and prosecute the defendant for the respective charges, in which each jurisdiction had the greater interest." * * * "The conduct of police and prosecutors * * * [has been] shown to be nothing more than the type of routine cooperation commended by the court in *United States v. Guzman* * * *. The purely speculative conclusory allegations of the defendant * * * do not demonstrate that either state was acting as the prosecutorial tool of the other."

Conclusion

Because we discern no circumstance warranting an exception to the dual sovereignty doctrine, we are satisfied that the motion justice properly denied the defendant's motion to dismiss the kidnapping with intent to extort count from the Rhode Island



PDF created with pdfFactory trial version www.pdffactory.com

> indictment. It therefore is unnecessary to address the defendant's substantive double jeopardy argument raised on appeal. Accordingly, we affirm the order denying the defendant's motion to dismiss and remand the papers to the Superior Court.

(State v. Rodriguez, 917 A.2d at 413-17.)

The State would respectfully suggest that for these persuasively articulated reasons of the Rhode Island Supreme Court, the arguments of Petitioner lack substance.

In any event, because this Court, on October 18, 2007, has already dismissed the identical legal argument made by Petitioner in an earlier filed habeas corpus petition (C.A. No. 07-329ML), principles of *res judicata* ought to preclude Petitioner from once again seeking to litigate the argument made in that dismissed case. (*See* Rule 41(b) of the District Court Rules of Civil Procedure, providing, in most relevant part, that "any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits."); Wright & Miller, Federal Practice and Procedure: Civil 3d § 2373, page 750 ("If the court does not specify that the dismissal is without prejudice, and it comes within the terms of the final sentence of Rule 41(b), the dismissal will be with prejudice. This result is reached both when the district court expressly provides that dismissal is with prejudice and when it is silent on the matter. Indeed, one of the most useful features of Rule 41 is that it gives the court discretion about the effect of a dismissal and provides what the effect will be if the court fails to specify.").[3]

[3] Of course, if this habeas petition had been one brought under 28 U.S.C. § 2254, the "second or successive application" bar of 28 U.S.C. § 2244(b)(3)(A)(providing that "[b]efore a second or successive application is permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application") would have required its dismissal; because, however, as referenced above, the instant habeas action appears to be



PDF created with pdfFactory trial version www.pdffactory.com

Accordingly, the State would respectfully move to dismiss Petitioner's *Petition Under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State Custody*.

Conclusion

Accordingly, the State would respectfully move to dismiss Petitioner's *Petition Under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State Custody*.

**STATE OF RHODE ISLAND**
By Its Attorneys,
**PATRICK C. LYNCH**
**ATTORNEY GENERAL**

**/s/ Aaron L. Weisman**

**AARON L. WEISMAN #4438**
Department of Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400

**CERTIFICATION**

Pursuant to AP 10 of this Court, effective August 1, 2006, I hereby certify that on the 3rd day of April, 2008, I filed this document electronically and that it is available for viewing and downloading from the ECF system. Service was accomplished by transmission of the Notice of Electronic Filing generated by the ECF system to the following attorney of record:

Edward J. McEnaney III, Esquire
attymcenaney@aol.com

and, I placed a copy of the within document in the U.S. mail, postage prepaid, to Marcos Rodriguez, #111006, Intake Center, MOD E-212-B, P.O Box 8249, Cranston, RI 02920 and to Raymond S. Sussman, Esquire, 4523 Avenue H, Brooklyn, New York 11234 on the same date.

/s/ Aaron L. Weisman

---

one made pursuant to 28 U.S.C. § 2241, it is not clear that § 2244's "second or successive application" bar would apply, *see* Simon v. U.S., 359 F.3d 139, 143-44 (2nd Cir. 2004).



PDF created with pdfFactory trial version www.pdffactory.com